[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves two claims. The plaintiff seeks to have the Court vacate an Arbitration Award and the defendants seek to confirm the award or in the alternative have the Court remand the case to the arbitrators for a rehearing and/or additional findings.
 FACTS
The parties have agreed to a Stipulation of Facts dated on or about May 15, 2002 which Stipulation without exhibits is attached hereto and incorporated herein as Schedule A. In summary, however, the Court finds, in addition to the Stipulation of Facts, the following facts:
1. The plaintiff underwrote a policy of boiler and machinery insurance for energy Corporation and other named insureds to cover a coal-fired electrical generating facility located near Newark, Arkansas. Defendants underwrote a program of "all risks" property insurance for energy Corporation and other insureds.
2. On August 11, 1993, there was a catastrophic loss event at Independent Steam Electric Station Unit Two ("ISES Unit Two") which occurred at the facility located near Newark, Arkansas aforementioned. The owners of ISES Unit Two, Arkansas Power Light Company and others promptly made claims against both the plaintiffs' and the defendants' policies, which claims were subsequently denied.
3. Plaintiff contended that the cause of the loss was an explosion of gas or unconsumed fuel, a peril excluded from its coverage and covered under the defendants' policy.
4. Defendants contended that the loss was the "breakdown of a fired vessel" excluded from the coverage provided by the defendants' insurance CT Page 9467 and that the event did not involve a combustion explosion that would otherwise render it (in whole or in part) a covered loss.
5. The insureds invoked parallel "Loss Adjustment Endorsements" found in the plaintiffs policy and the defendants' policy.
6. Pursuant to the policies plaintiff paid $10,933,435.86, and defendants paid $11,880,525.33. The difference is attributable to certain amounts that the parties agreed were within their respective coverages: $948,102.27 in costs that defendants admitted were covered by their policy and $1,012.80 in expenses that plaintiff admitted were its responsibility.
7. The coverage dispute between the plaintiff and defendants was then submitted to a panel of three arbitrators, namely Edwin W. Whitmore, Larry E. Gordon and Frank W. Ockerby as the third arbitrator and umpire.
8. The arbitration was conducted pursuant to the agreed March 1996 "Procedures to Govern the Arbitration".
9. The initial arbitration hearing was conducted in Memphis, Tennessee. The parties stipulated to an October 25, 1996 "Joint Statement of Issues."
10. On January 9, 1997 the Panel issued an interim Award on the factual questions set forth in the Joint Statement of Issues entitled "Decision of Arbitrators."
11. In response to questions by the parties as to the meaning of the Award, on September 22, 1997 the arbitrators issued a "Supplemental and Clarified Decision to the Answer of Issue iv of the January 9, 1997 Decision of Arbitrators."
12. As a result of the Panel's resolution of these questions the parties agreed that part of the loss fell within the coverage of the defendants and part of the loss fell within the coverage of the plaintiff.
13. The parties were unable to agree on the manner in which repair and restoration costs were to be allocated to each policy.
14. Plaintiff and defendants then resubmitted the matter to the Arbitration Panel for resolution subject to a July 19, 1999 stipulated "Statement of Issues and Procedural Time Line for Entergy Arbitration." The parties and arbitrators also agreed upon a set of "Revised Procedures to Govern the Phase II Arbitration Re: Allocation Issues." CT Page 9468
15. This second phase of the arbitration hearing took place in Windsor Locks, Connecticut on June 28 and 29, 2001.
16. The Panel rendered an award entitled "Decision of Arbitrators" on January 24, 2002.
17. The award was in favor of the defendants, and on February 22, 2002
he plaintiff submitted an "Application to Vacate Arbitration Award". Defendants filed an "Application to Confirm the Arbitration Award, or, in the alternative, to refer to arbitrators for clarification."
18. A hearing was held on May 22, 2002 before this Court on the two applications even though the defendants' Application to Confirm Arbitration Award etc. does not appear to be in the file. However, it is addressed by both parties in the respective briefs and supplemental briefs the parties filed prior to May 22, 2002 and subsequent thereto.
 STANDARD OF REVIEW
Plaintiff contends the arbitrators violated C.G.S. § 52-418 (a)(4) in that ". . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
The determination of the issues before this Court has to be based upon the evidence submitted to it with the briefs of the parties. Further, it is plaintiffs burden to produce sufficient evidence to invalidate the award. Awards based upon consensual arbitration are subject to only minimal judicial intervention. See Metropolitan District Commission v. AFSCME, 37 Conn. App. 1 (1995). Every reasonable presumption and intendment must be indulged in favor of the award. Cashman v. Sullivan 
Donegan P.C., 23 Conn. App. 24 (1990). Unless the submission provides otherwise, an Arbitrator has authority to decide factual and legal questions, and courts will not review the evidence, or where the submission is unrestricted, the Arbitrator's determination of legal questions. O G/O'Connell Joint Venture v. Chase Family Limited Partnership, 203 Conn. 133 (1987). "When the scope of the submission award is unrestricted, the resulting award is not subject to de novo review even for errors of law so strong as the award conforms to the submission." SCRRA v. American Re-Fuel Co. of Southeastern Connecticut,44 Conn. Sup. 482, 484, 485 (1997) affirmed, 44 Conn. App. 728 (1997). "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of the issues, reserving explicit rights, or conditioning the award on court review." Id. 485. CT Page 9469
 ISSUES
1. Was there a waiver of the present claims of the plaintiff by the plaintiff?
"[c]ourts should `indulge every reasonable presumption against waiver.'" Parker v. Wingo, 407 U.S. 514, 525 (1972). "Waiver presupposes a full knowledge of an existing right or a privilege and something done designedly or knowingly to relinquish it" either directly or by reasonable inference. (Emphasis added). Reinke v. Greenwich Hospital Assn., 175 Conn. 24, 27 (1978). Defendants have cited statements made by the plaintiffs counsel at the hearing of June 28, 2001 before the arbitrators. Attorney Stockman for the plaintiff stated on page 269 "The end point from the Panel is a statement that someone pays someone and how much they pay." The Court considers that an offhand remark which is not all inclusive and does not amount to a waiver of "an existing right done designedly or knowingly to relinquish it" either directly or by reasonable inference. (Emphasis added). Defendants also claim that the submission by the plaintiff to the Panel of its Decision Matrix is also a waiver by the plaintiff. This Court finds that the submission of said Matrix is not a waiver of an existing right or privilege and does not fit the category of "something done designedly or knowingly to relinquish it." Reinke, supra. There was no intent to relinquish any rights either directly or by inference. Therefore, the answer to the question posed above is "No". The plaintiff did not waive its present claims.
 2. Did the Arbitrators' award(s) or decision(s) conform to the submission(s)
The Court, after reviewing the transcript of the hearing before the Panel of June 28, 2001, Volume II, the transcript of the hearing before this Court on May 22, 2002, the submissions and briefs of the parties including exhibits and a review of the applicable law makes the following findings:
(a) The Federal Arbitration Act, 9 U.S.C. § 1, et seq. and the State Arbitration Act, Chapter 909 of the Connecticut General Statutes, specifically, C.G.S. § 52-418, both apply to this case. The language is essentially the same, and the criteria applied to the Application to Vacate is the same:". . . if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
(b) All of the proceedings regarding the arbitration is one continuous arbitration. It contains different phases, but is all the same CT Page 9470 arbitration. There is no "former" arbitration. The arbitration is in Phase I and Phase II[1] The submissions to the arbitrators for both the January 9, 1997 Decision of Arbitrators and the Decision of the Arbitrators dated January 24, 2002 are the same. They both include the following language:
 "The arbitration award shall be in writing and shall contain findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." (Emphasis added).
See Exhibit C attached to the Stipulation of Facts and Exhibit H to the Stipulation of Facts. The Court interprets the aforementioned language which states in pertinent part: ". . . conclusions regarding the interpretation of the insurance policies . . ." to be the same as the requirement of "conclusions of law" as set forth in the case of Western Employers Ins. v. Jefferies Co., Inc. et al, 958 F.2d 258, 259 (Ninth Circuit) (1992). The interpretation of an insurance contract is the same as a legal conclusion of the applicability of an insurance policy. Courts interpret contracts which are insurance policies all the time, and that is considered an interpretation or a conclusion of law as to the policy. Therefore, the standard in the case at bar and in the Western Employers Ins, case, supra, are the same. The Court concludes that these submissions were not unrestricted submissions because the arbitrators were required to follow the aforementioned requirements. Counsel for both sides stated that nothing precludes the arbitrators from ruling on the law. TT page 8.[2]
(c) It has been stated both in the briefs and in the hearing of March 22, 2002 that the courts are not permitted to vacate an award because of an alleged error in contract interpretation. That may be true, but the claim here is not that there was error in contract interpretation. The claim here is that there was no contract interpretation at all.
(d) In the hearing of May 22, 2002 plaintiff claimed that on issues of fact and interpretation, the arbitrators should have been more specific, and the defendants believe that the requirement is in general and does not have to be as specific as the plaintiff claims.
(e) As of the First Joint Statement of Issues, Exhibit D to the Stipulation of Facts, four issues were presented, and in the Decision of Arbitrators, Exhibit E to the Stipulation of Facts, it is clear that the Panel voted no as to Issue 1, yes as to Issue 2 (both issues in No. 2), the finding on Issue 3 was (ii), and as to Issue 4 the issue was "Was the damage . . . caused by (i) one or more explosions of gasses or unconsumed CT Page 9471 fuel (as HSB argues); or (ii) over pressurization of the furnace enclosure due solely to the load imparted by steam flashing from ruptured tube ends (as the All-Risk Insurers argue)? The Panel found that both (i) and (ii) were the cause. It did not explain why this decision was reached or how the costs were to be apportioned. (Emphasis added).
(f) In the Supplemental and Clarified Decision of the Arbitrators to the answer of Issue No. 4 of the January 9, 1997 Decision of Arbitrators, Exhibit F to the Stipulation of Facts, the Panel expanded on its answer to the No. 4 Issue, but still did not apportion the liability between the parties and further stated that no evidence was presented to the Panel to quantify the damages caused by steam or by combustion explosion(s).
(g) The Court, therefore, finds that the facts as announced by the Panel are not as specific and as comprehensive as was required. Further, the Court finds that there was insufficient interpretation of the insurance policies. However, this Court cannot totally fault the arbitrators on this because the Joint Statement of Issues merely mentioned the various sections of the policies which would lead the Panel to merely say yes or no as to the sections of the policies. The parties themselves to some degree limited the findings by improperly limiting the questions.
(h) The problem of lack of specificity is more apparent in regard to the Decision of January 24, 2002, Exhibit K to Stipulation of Facts. In the Submission of Issues, Exhibit G to the Stipulation of Facts, the following language was also included: "B. The Panel must resolve all liability and allocation issues with respect to each category of costs identified in paragraph 1, including, without limitation, all coverage issues." Although the Panel in its Decision of Arbitrators dated January 24, 2002 recited the scope of the arbitration including the aforementioned paragraph B, there is no explanation or resolution of coverage issues. Further, there are no facts that support the figures in paragraphs a and b on the last page of the Decision of Arbitrators. There are no supporting facts or allocation of liability or the reasons for the numbers that have been awarded as well as to which party liability should attach for each of these figures. Further in paragraph b there are neither supporting facts to adequately interpret the numbers assigned to Boiler Machinery nor the numbers assigned to All Risk. The findings are not sufficiently specific or comprehensive to comply with the requirement that all liability and allocation issues and all coverage issues be resolved, nor do the findings contain sufficient findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award. CT Page 9472
 REMEDY
The Court is reluctant to vacate the award because that would mean starting over again, and the parties would lose all the work, effort, etc. that covered six years of this arbitration. In the interest of economy of the parties, the Panel and judicial economy, it would appear that a remand to the arbitrators would be more practical and a better remedy than vacating the awards. However, the Court must have authority to do so. The plaintiff claims that there is no authority for a remand, and the defendants claim that there is. The pertinent part of the applicable statutes is: "If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."
The Court finds that the final briefs were submitted on September 28, 2001 thereby setting a deadline (30 days) of October 28, 2001 for the award. On October 24, 2001 the Panel sought a delay in order to obtain advice from a Certified Public Accountant. The parties agreed to a delay from October 24, 2001 until January 24, 2002. Therefore, the thirty day period was tolled from October 24 to January 24 as aforesaid and, therefore, the final award was made within thirty days of October 28, 2001. Accordingly, the Court finds that the award was rendered within the thirty day time limit. Plaintiff claims that the time for making the award has now expired because if the Court directs a rehearing or a remand to the arbitrators it would be doing so beyond the January 24, 2002 deadline. However, it would be impossible for the Court to direct a rehearing by the arbitrators before the time for the award has expired. If the award were made on the 28th day from submission of briefs, then the Court would have only two days in which to make a decision for a remand assuming that the application to vacate could be filed and presented to a judge within the thirty day time limit. The law does not contemplate permitting something that is impossible to perform. In this particular case, because there was a tolling of the time period, it would still be impossible for the Court to even review an application to vacate and then order a remand because the time period expired as soon as the award was made on January 24, 2002. The time limit would have been October 28, 2001 if there had not been an agreed upon extension for tolling until the CPA gave his advice which occurred on the same day the award was made, January 24, 2002.
Accordingly, the Court finds that the time limit for making the award was fulfilled, but the time limit for the Court to act was and is an impossibility, and therefore, not applicable.
The Court hereby remands to the Arbitration Panel for a rehearing by the Panel and/or for a clarification of its awards so that it complies CT Page 9473 with the requirements of the submissions and so that there be a sufficient finding of facts and interpretations of the policies so as to fully comply with the submissions. The parties are ordered, for the benefit of the Panel, to submit written interrogatories to the Panel so that if answered, the parties will be satisfied that there are sufficient findings of fact and interpretations of the policies. The parties are farther ordered to submit to the Panel, for its benefit, proposed findings of facts and interpretations of policies. The interrogatories and proposed findings are to be submitted to the Panel within sixty days of the date of this decision or at any other date agreed upon by the parties. Upon the rehearing and submission of the interrogatories and proposed findings, the Panel is ordered to clarify its decisions as stated above within sixty days of the hearing or receipt of the interrogatories and proposed findings, whichever is later.
Rittenband, JTR
 SCHEDULE A
PJR-CV-02 Docket No. 814620 SUPERIOR COURT
HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, Plaintiff JUDICIAL DISTRICT OF HARTFORD vs.
UNDERWRITERS AT LLOYD'S AND COMPANIES COLLECTIVE, NATIONAL UNION FIRE INSURANCE COMPANY, INTERNATIONAL FIRE INSURANCE COMPANY, AETNA CASUALTY AND SURETY COMPANY, HOME INSURANCE COMPANY, and ZURICH INSURANCE COMPANY, Defendants
 STIPULATION OF FACTS
Plaintiff Hartford Steam Boiler Inspection and Insurance Company ("HSB") and Defendants Underwriters at Lloyd's and Companies Collective, National Union Fire Insurance Company, International Fire Insurance Company, Aetna Casualty and Surety Company, Home Insurance Company, and Zurich Insurance Company, stipulate as follows:
1. HSB underwrote policy number BMI-SAl-9225738-13, a policy of boiler and machinery insurance, effective from May 1, 1991 through May 1, 1994, for Enetergy Corporation and other named insureds (the "HSB Policy"). An accurate copy of relevant portions of the HSB Policy is attached as CT Page 9474 Exhibit A.
2. Defendants underwrote a program of "all risks" property insurance for energy Corporation (and other insureds), effective from June 1, 1993 to June 1, 1994 (the "All-Risks Insurance"). An accurate copy of relevant portions of Binder No. 2103, which the parties accepted as a true and accurate copy of the language of the All-Risks Insurance for purposes of the arbitration, is attached as Exhibit B.
3. On August 11, 1993, there was a catastrophic loss event at Independence Steam Electric Station Unit Two ("ISES Unit Two"), a coal-fired electrical generating facility located near Newark, Arkansas, causing in excess of $28 million in damage.
4. The owners of ISES Unit Two, Arkansas Power Light Company and others, promptly made claims against both the HSB Policy and the All-Risks Insurance.
5. After investigating the loss, both HSB and Defendants denied coverage under their respective policies.
6. HSB contended that the cause of the loss was an explosion of gas or unconsumed fuel, a peril excluded from its coverage and covered under the All-Risks Insurance.
7. Defendants contended that the loss was the "breakdown of a fired vessel," excluded from the coverage provided by the All-Risks Insurance, and that the event did not involve a combustion explosion that would otherwise render it (in whole or in part) a covered loss.
8. When faced with these reciprocal denials, the insureds invoked parallel "Loss Adjustment Endorsements" found in both the HSB Policy and the All-Risks Insurance.
9. Pursuant to the endorsements, HSB paid $10,933,435.86 and Defendants paid $11,880,525.33. The difference is attributable to certain amounts that the parties agreed were within their respective coverages: $948,102.27 in costs that Defendants admitted were covered by the All-Risks Insurance, and $1,012.80 in expenses that HSB admitted were its responsibility.
10. Under the terms of the Loss Adjustment Endorsements, the coverage dispute between HSB and Defendants was submitted to a panel of three arbitrators.
11. Defendants appointed Edwin W. Whitmore to the panel. HSB appointed CT Page 9475 Larry E. Gordon. Messrs. Whitmore and Gordon jointly selected Frank W. Ockerby to serve as the third arbitrator and umpire.
12. The arbitration was conducted pursuant to the agreed March 1996 "Procedures to Govern the Arbitration," attached as Exhibit C.
13. The initial arbitration hearing was conducted in Memphis, Tennessee on October 21 through 25, 1996. This hearing focused on the causes and progress of the August 11, 1993 loss, and on certain factual questions relating to the application of certain policy language to certain technical designs aspects of ISES Unit Two.
14. Pursuant to the request of the arbitrators, the parties stipulated to an October 25, 1996 "Joint Statement of Issues," attached as Exhibit D, to be addressed by the arbitrators in their Award.
15. On January 9, 1997; the arbitral panel issued an interim Award on the factual questions set forth in the Joint Statement Of Issues, entitled "Decision of Arbitrators," attached as Exhibit E.
16. In response to questions by the parties as to the meaning of the Award, on September 22, 1997 the arbitrators issued a "Supplemental 
Clarified Decision to the Answer of Issue IV of the January 9, 1997 Decision of Arbitrators," attached as Exhibit F.
17. As a result of the panel's resolution of these questions, the parties agreed that part of the loss fell within the coverage of the All-Risks Insurance, and part of the loss fell within the coverage of the HSB Policy.
18. The parties were unable to agree on the manner in which repair and restoration costs were to be allocated to each policy.
19. Accordingly, HSB and Defendants resubmitted the matter to the arbitral panel for resolution, subject to a July 1999 stipulated "Statement of Issues and Procedural Timeline for energy Arbitration," attached as Exhibit G.
20. In connection with this submission, in August 1999 the parties and arbitrators agreed upon a set of "Revised Procedures to Govern the Phase II Arbitration Re: Allocation Issues." An accurate copy of the "Revised Procedures to Govern the Phase II Arbitration Re: Allocation Issues" is attached to HSB's Application to Vacate Arbitration Award as Exhibit A, and is attached hereto as Exhibit H.
21. This second-phase arbitration hearing took place on June 28 and CT Page 9476 29, 2001 in Windsor Locks, Connecticut.
22. Following the hearing, the parties submitted position statements advocating factual and legal positions. Accurate copies of the final position statements submitted by HSB and Defendants are attached as Exhibits I and J, respectively.
23. The panel rendered an award entitled "Decision of Arbitrators" on January 24, 2002, attached to HSB's Application to Vacate Arbitration Award as Exhibit B, and attached hereto as Exhibit K.
HARTFORD STEAM BOILER April 2002 INSPECTION AND INSURANCE COMPANY
Edward F. Spinella REID AND RIEGE, P.C. Juris No. 49362 One State Street Hartford, CT 06103 (860) 278-1150
Thomas E. Birsic Paul K. Stockman KIRKPATRICK LOCKHART LLP Henry W. Oliver Building 535 Smithfield Street Pittsburgh, PA 15222
UNDERWRITERS AT LLOYD'S AND May 15, 2002 COMPANIES COLLECTIVE, NATIONAL UNION FIRE INSURANCE COMPANY, INTERNATIONAL FIRE INSURANCE COMPANY, AETNA CASUALTY AND SURETY COMPANY, HOME INSURANCE COMPANY, and ZURICH INSURANCE COMPANY,
By Stephen E. Goldman ROBINSON COLE Juris No. 50604 280 Trumbull Street Hartford, CT 06103-3597
Clayton H. Farnham, Esq. DREW ECKL FARNHAM 880 West Peachtree Street P. 0. Box 7600 Atlanta, GA 30357-0600
 CERTIFICATION
I hereby certify that on the 17 day of May, 2002, a copy of the foregoing Stipulation of Facts was sent by first class mail, postage prepaid, to:
 Stephen E. Goldman, Esq. Robinson Cole 280 Trumbull Street Hartford, CT 06103-3597
Jennifer Lucarelli CT Page 9477